UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RALF HARTMANN,

                                        Plaintiff,

                    -v-

AMAZON.COM, INC. and AMAZON DIGITAL
SERVICES LLC,

                                        Defendants.

---

20 Civ. 4928 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

        This action involves claims of direct and secondary copyright infringement related to four

films.  Ralf Hartmann ("Hartmann"), a citizen of Germany, brings a civil copyright infringement

action against defendants Amazon.com, Inc. ("Amazon.com"), a Delaware limited liability

company, and its Amazon Digital Services LLC ("Amazon Digital") (together "Amazon").

Hartmann alleges that he owns copyrights and/or exclusive distribution rights to the films *After

the Rain*, *Commander Hamilton, Austin Powers: International Man of Mystery* ("*Austin

Powers*"), and *Drop Dead Gorgeous* (collectively, "the films").  He alleges that Amazon violated

his copyrights and exclusive distribution rights to the films by reproducing digital copies of them

at data centers within the United States, and by then making the films available for streaming,

purchase, or rental on its "Prime Video" platform.

        Hartmann brings claims of: (1) domestic direct infringement of copyright in the United

States, in violation of 17 U.S.C. § 106 (Count I); (2) direct infringement of copyright in the

United States causing further copyright infringement outside the United States, in violation of

17 U.S.C. § 106 (Count II); (3) contributory copyright infringement, in violation of 17 U.S.C.

§ 106 (Count III); (4) vicarious infringement of copyright, in violation of 17 U.S.C. § 106 (Count

IV); and (5) direct copyright infringement in violation of unnamed laws of unspecified foreign countries (Count V).

Pending now is Amazon's motion to dismiss Hartmann's Second Amended Complaint ("SAC").  For the reasons that follow, the Court denies the motion to dismiss the domestic direct infringement claim (Count I), but grants such motions as to the other four claims.

A.      **Factual Background**[1]

Hartmann alleges that, pursuant to a written agreement dated January 1, 2008, he was assigned the right, title and interest to the films: *After the Rain*, *Commander Hamilton, Austin Powers*, and *Drop Dead Gorgeous*.  *Id.* ¶¶ 21–22.[2]  According to Hartmann, and as reflected in records of the United States Copyright Office, Zweite Beteiligung KC Medien AG ("Zweite"), Erste Beteiligung KC Medien AG ("Erste"), and Capella International, Inc. ("Capella International") originally held various rights in these films.  *Id.* ¶¶ 16–17.  Hartmann alleges that, pursuant to written agreements dated May 27, 2007, Erste and Zweite assigned their respective right, title, and interest in the films to Capella International and a separate entity named Capella Films, Inc. (together "Capella"), thereby consolidating the copyrights with Capella.  *Id.* ¶¶ 19–20.  Capella then transferred its respective right, title, and interest in the films to Hartmann, making him the copyright owner of *After the Rain* and *Commander Hamilton* and the copyright

---

[1] This factual account draws from the SAC, Dkt. 37, and the exhibits incorporated therein, SAC Exs. A to F.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  Here, the Complaint incorporates by reference and makes integral the attached exhibits; the Court thus considers these documents in deciding Amazon's motion under Rule 12(b)(6).  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

owner—with respect to certain international copyright and distribution rights—of *Austin Powers* and *Drop Dead Gorgeous*. *Id*. ¶¶ 21–24.

Hartmann alleges that, between July 2017 and December 2017, Amazon made the films *After the Rain*, *Commander Hamilton, Austin Powers*, and *Drop Dead Gorgeous* available for digital distribution via streaming, rent, or purchase in the United States without license or authorization from Hartmann, in violation of Hartmann's right of reproduction conferred by his copyright in the films under 17 U.S.C. § 106. *Id*. ¶¶ 41–48.  He further alleges that during the same period, Amazon made the four films available for digital distribution in foreign countries "including, but not limited to, Great Britain, Ireland, Germany, Japan and France," also in violation of Hartmann's copyright in the films.  *Id*. ¶¶ 51–58.  Hartmann also alleges that Amazon duplicated and reproduced the films at data centers within the United States, allowing end users of its "Prime Video" service to ultimately stream, rent, or buy the films within the United States and in the aforementioned foreign countries.  *Id*. ¶¶ 44–49, 54–59.

### B.      Procedural History

On June 26, 2020, Hartmann filed the original complaint, Dkt. 1, and, on October 30, 2020, the First Amended Complaint, Dkt. 24.  On December 15, 2020, Amazon moved to dismiss.  Dkt. 31.  On December 16, 2020, the Court issued an order, which, *inter alia*, gave Hartmann until January 16, 2021 to file any amended complaint in response to the motion to dismiss.  Dkt. 34.

On January 20, 2021, Hartmann filed a Second Amended Complaint ("SAC").  Dkt. 37. It pleads that Amazon violated Hartmann's copyright and/or exclusive distribution rights in the films by reproducing the films at data centers within the United States then making the films available for streaming, purchase, or rental on Amazon's Prime Video service.  *Id*. ¶¶ 41–64.  It

further alleges that "end users" located within the United States and several "foreign countries" accessed the films through Amazon's Prime Video service in violation of Hartmann's copyrights in the films.  It pleads five counts of copyright infringement: (I) direct infringement of copyrights; (II) direct infringement in the United States causing further infringement abroad; (III) contributory infringement within the United States; (IV) vicarious infringement; (V) direct infringement in violation of foreign laws.

On February 11, 2021, Amazon filed a motion to dismiss all claims, Dkt. 38, and a memorandum of law in support, Dkt. 39 ("Def. Mem.").  On March 24, 2021, Hartmann filed an opposition.  Dkt. 44 ("Opp'n").  On May 14, 2021, Amazon filed a reply.  Dkt. 46 ("Reply").

The SAC includes six attachments labelled as Exhibits A through F, under the header "chain of title."  These substantiate Erste's, Zweite's, and Capella's ownership of copyrights in the film at various points in time, and thus the chain of title of the copyright.  SAC ¶¶ 16–22. Exhibit A is a copyright registration certificate for the film *After the Rain* identifying the copyright claimant as "Third Orbit Productions, Inc., & Erste & Zweite KC Medien, AG."  Dkt. 37-2 ("Ex. A").  Exhibit B is a certificate for a "memorandum of exclusive rights" to *Commander Hamilton* executed in 1998 between "Moviola Film & Television, AB & TV 4, AB" and "Capella International, Inc., Erste Beteiligung KC Medien AG & Co., KG & Zweite Beteiligung KC Medien AG & Co., KG."  Dkt. 37-3 ("Ex. B").[3]  Exhibit E includes two recorded documents, the first establishing the transfer of copyright in *Austin Powers* from New Line Productions, Inc. to Capella International, and the second establishing the transfer of copyright in *Austin Powers* from Capella International to Erste.  Dkt. 37-6 ("Ex. E").  Exhibit F

---

[3] Exhibits C and D include copyright registration certificates for *The Last Tattoo* and *Pete's Meteor* respectively.  These two films are irrelevant to Hartmann's claims in this case.

is a certificate for a "memorandum of sale" for *Drop Dead Gorgeous* executed in 2000 between

New Line Productions, Inc. and "Erste Beteiligung KC Medien AG & Co. KG, Zweite

Beteiligung KC Medien AG & Co. KG & Dritte Beteiligung KC Medien AG & Co. KG."  Dkt.

37-3 ("Ex. F").  No attached exhibit explicitly lists Hartmann as a party to any copyright

transaction.[4]

## II.    Legal Standards

### A.    Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, a district court limits itself to "facts

stated in the complaint or in documents attached to the complaint as exhibits or incorporated in

the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660,

661 (2d Cir. 1996) (quotation omitted).  To survive a motion to dismiss under Rule 12(b)(6), a

complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

complaint is properly dismissed where, as a matter of law, "the allegations in a complaint,

however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When

resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing

all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145.  That tenet, however,

does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

---

[4] The exhibits include the actual registration number for *After the Rain*, *see* Ex. A, but provide only registration numbers for recorded documents (and not the actual films themselves) for the other films, *see* Ex. B; Ex. E; Ex. F.

*Twombly*, 550 U.S. at 555.  Instead, to survive a motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level."  *Id.*

### B.     Governing Statutory Framework

Under 17 U.S.C. § 106, the owner of a copyright holds the rights to "reproduce the work, prepare derivative works, distribute the work to the public, perform the work, display the work, and perform the work by means of digital transmission." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 402 (2d Cir. 2018).  In protecting the copyright owner's exclusive entitlement to this bundle of rights, the Copyright Act "expressly creates liability only for direct copyright infringers."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc*., 206 F. Supp. 3d 869, 897 (S.D.N.Y. 2016).  However, others can be held liable through "two doctrines that establish third party liability in copyright law: contributory infringement and vicarious liability."  *Id.*; *see, e.g.*, *Gershwin Publishing Corp. v. Columbia Artists Management, Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971); *Peer Int'l Corp. v. Luna Records, Inc*., 887 F. Supp. 560, 564–65 (S.D.N.Y. 1995); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 292–94 (S.D.N.Y. 1988).

A person or entity "infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quotations omitted).  Therefore, contributory infringement "is based upon the defendant's relationship to the direct infringement," while vicarious infringement rests "on the defendant's relationship to the direct infringer."  *Ez-Tixz, Inc. v. Hit-Tix, Inc*., 919 F. Supp. 728, 732 (S.D.N.Y. 1996).  In sum, copyright infringement "may be direct, contributory, or vicarious," so a plaintiff has three discrete pathways to demonstrate an alleged infringer's liability.  *New London Associates, LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 407 (S.D.N.Y. 2019).

6

## III.     Discussion

For the reasons that follow, the Court denies Amazon's motion to dismiss Count I, which alleges direct copyright infringement, but grants the motion to dismiss the remaining four counts.

### A.     Direct Copyright Infringement (Count I)

#### 1.     Relevant Law

Hartmann first alleges that Amazon's reproduction of the films directly infringed his copyright.  *Id.* ¶¶ 65–66.  For such claim to survive a motion to dismiss, the claim must allege:

> 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright.

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992); *see, e.g.*, *Gym Door Repairs, Inc.*, 206 F. Supp. 3d at 893; *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 352 (S.D.N.Y. 2014); *Warren v. John Wiley & Sons*, Inc., 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000).

The first prong of the *Kelly* test is self-explanatory:  Courts require that plaintiffs plead "which specific original works are the subject of the copyright claim."  *Warren*, 952 F. Supp. 2d at 616 (applying the *Kelly* test).  A complaint fails this prong if it "base[s] an infringement claim on overly-inclusive lists" that are "vague . . . regarding which works are the subject of" the claim.  *Cole v. John Wiley & Sons, Inc.*, No. 11 Civ. 2090 (DF), 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012).

The second prong requires a plaintiff to assert ownership of the relevant copyrights to sustain an infringement claim.  "Under the Copyright Act, a certificate of registration [from the United States Copyright Office] constitutes prima facie evidence of the valid ownership of a copyright."  *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936 (KMW),  2011 WL

7

1641978, at *2 (S.D.N.Y. Apr. 29, 2011); *see* 17 U.S.C. § 401(c).  Therefore, those named as the copyright owners in the registration can use a registration certificate as *prima facie* evidence of ownership.  But, when a copyright was transferred from the original registered owner to another party, ownership can be harder to prove.  An assignee who acquires a copyright through a transfer faces "the additional burden of proving valid chain of title because nothing in the registration certificate evidences his right to claim through the original copyright claimant." *Arista Records*, 2011 WL 1641978, at *2 (quotation omitted).  However, at the motion to dismiss stage, "an assignee may assert a claim for copyright infringement that occurred after the transfer as long as he plausibly alleges that he received the copyright through a valid transfer and was the copyright owner during the alleged infringement."  *Hutson v. Notorious B.I.G.*, LLC, No. 14 Civ. 2307 (RJS), 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015).  The plaintiff need not provide a "detailed factual recitation" recounting every step of the "chain of title" which culminated in his or her ownership of the copyright.  *U2 Home Ent., Inc. v. Kylin TV, Inc.*, No. 06 Civ. 02770 (DLI) (RLM), 2007 WL 2028108, at *7 (E.D.N.Y. July 11, 2007).  Although later in the litigation the plaintiff bears the burden of proving copyright ownership, at this early stage, a mere allegation of ownership may suffice.  *Id.*

The third prong requires an allegation of federal copyright registration of the relevant works.  *Kelly*, 145 F.R.D. at 37.  Such registration is a "prerequisite to suit."  *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made." (quoting 17 U.S.C. § 411(a))).  Nevertheless, at the motion to dismiss stage, the plaintiff need only "allege . . . that the copyrights have been registered in accordance with the statute."  *Kelly*, 145 F.R.D. at 36.  As long as the complaint

8

"expressly state[s] that Plaintiff has a registered copyright in the creative works identified herein . . . . Plaintiff has fulfilled the precondition of alleging that it holds a registered copyright." *Bill Diodato Photo. LLC v. Avon Products, Inc.*, 12 Civ. 847 (RWS), 2012 WL 3240428, at *8 (S.D.N.Y. Aug. 7, 2012) (quotation and citation omitted). Therefore, a complaint alleging that the copyrights at issue have been registered with the United States Copyright Office, although failing to provide the exact registration numbers, will survive a motion to dismiss based on the lack of a pleading as to registration. *See Palmer Kane LLC v. Scholastic Corp.*, 12 Civ. 3890 (TPG), 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) ("The complaint properly alleges that the copyrights have been registered in stating that the copyrights that are the subject of this action have been registered with the United States Copyright Office. Contrary to defendants' contentions, the complaint is not required to attach copies of registration certificates or provide registration numbers for all of the copyrights at issue in order to survive a motion to dismiss." (quotation and citation omitted)).

The fourth prong requires that the complaint state "by what acts during what time the defendant infringed the copyright." *Kelly*, 145 F.R.D. at 36. To satisfy this requirement, the complaint "need not specify which copyright is infringed by which act," but it must "contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement." *Palmer Kane*, 2013 WL 709276, at *3.

> 2.     **Analysis**

The SAC adequately pleads all four required elements. As to the first two, the SAC lists the original works that are subject of the claim and alleges that Hartmann owns the copyrights in them:

> Ralf Hartmann is the owner of copyrights in the following motion pictures which are registered with the United States Copyright Office: *After the Rain* [and]

9

> *Commander Hamilton* . . . . Ralf Hartmann is the owner of copyrights in the following motion pictures which are registered with the United States Copyright Office: *Austin Powers* and *Drop Dead Gorgeous*.

SAC ¶¶ 23–24; *see also id.* ¶ 25 (alleging that, pursuant to these copyrights, Hartmann has exclusive rights to "reproduce the copyrighted work," "distribute copies," and "to transmit or otherwise communicate" the films "to the public by means of any device or process"). As to the third *Kelly* prong, the SAC's allegation of registration of the four films with the United States Copyright Office suffices. *See id.* ¶¶ 23–24 (alleging that the four films "are registered with the United States Copyright Office").

Finally, to satisfy the fourth prong, the SAC alleges specific acts of infringement by Amazon. It alleges that Amazon made the films "available for digital distribution within the United States either via streaming on demand, and/or for rent or sale on its Prime Video service within the United States" and by "copy[ing] and reproduc[ing] [the films] - hundreds of times and more - on and across Amazon's Data Centers within the United States." *Id.* ¶¶ 44, 47; *see also id.* ¶¶ 41, 54 ("In July 2017 and after, Amazon, without Plaintiff's authorization, reproduced and made identical digital copies of Plaintiff's copyright protected motion pictures[.]"; "[I]n July 2017 and after, Amazon Digital . . . made the motion pictures [available] for digital distribution via the Prime Video service and to end users located outside the United States.").

The SAC therefore pleads a viable direct infringement claim.

In pursuing dismissal, Amazon focuses on the third *Kelly* prong. It notes that the registration numbers set out in the SAC "do not correspond to registrations for underlying motion picture works" but to "recordations of copyright-related contracts." Def. Mem. at 12. Amazon asserts that "by claiming to have recorded U.S. Copyrights in [the films] but citing to recordation certificates for contracts related to those works, the SAC fails to plausibly allege"

registration of the works. *Id.*  Similarly, Amazon contends that "none of the information attached as exhibits to the SAC support Plaintiff's allegations that he owns the copyrights" to the films. *Id* at 14.

Amazon is factually correct that the registration numbers in the exhibits attached to the SAC are not those for the underlying works.  But the SAC did not allege that they are.  Rather, it alleged that the exhibits reflected part of a chain of title culminating in Hartmann's ownership of these films. *See* SAC ¶¶ 16–22; Opp'n at 6 (explaining that exhibits "are part of a chain of title, whereby the respective registered copyrights" in the films "were ultimately transferred" to Hartmann).  And although the attached exhibits do not dispositively prove that Hartmann owns the copyrights to the films, there was no requirement that the complaint do so to survive a motion to dismiss.  It is enough that the complaint alleges "that plaintiff owns the copyrights in those works" and "that the copyrights have been registered in accordance with the statute." *Kelly*, 145 F.R.D. at 36.  The SAC does so.  The Court therefore denies Amazon's motion to dismiss this claim.  It awaits discovery, and potentially summary judgment practice, to determine whether Hartmann will be able to adduce valid evidence of ownership. *See Warren*, 952 F. Supp. 2d at 617.

## B.   Contributory Copyright Infringement (Counts II and III)

Count II alleges that Amazon's reproduction of the films at data centers in the United States allows end users located outside the United States to stream, rent, or buy the films, and that such is an act of direct infringement of copyright within the United States that causes further copyright infringement outside the country. *See* SAC ¶¶ 80–88.  Count III, in turn, alleges that Amazon's distribution of the films on its Prime Video platform, which allows end users located within the United States to stream, rent, or buy the films, constitutes contributory infringement of

Hartmann's copyrights.  *Id.* ¶¶ 62[5]–101.  These two counts are properly considered together because, although the SAC does not label Count II as involving contributory infringement but instead labels Amazon's conduct as "direct infringement . . . causing further copyright infringement," *id*. at 16, its factual allegations describe contributory infringement, which occurs when one "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."  *Capitol Records, LLC v. ReDigi Inc*., 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013); *see* SAC ¶¶ 85–86 ("Amazon's wrongful acts of reproduction of the motion . . . permitted further unauthorized reproduction and distribution of the motion pictures outside of the United States and further infringement by end-users of Prime Video in the Foreign Countries. [86] The foregoing acts of infringement by Amazon have been willful, intentional, and in disregard and with indifference to the rights of Plaintiff.").  Accordingly, the Court construes Counts III and II as alleging contributory infringement under 17 U.S.C. § 106, involving, respectively, domestic and foreign third-party infringers.

### 1.    Applicable Law

To establish secondary infringement claims under a theory of contributory or vicarious infringement, a plaintiff must first adequately allege direct infringement by a party other than the defendant.  *See Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 422 (S.D.N.Y. 2011) ("To establish their secondary liability claims, Plaintiffs first must establish that [a third party] directly infringed Plaintiffs' copyrights.").  Once a direct infringement claim by a third-party is established, a defendant "may be held liable for contributory copyright infringement if, with knowledge of the infringing activity, it materially contributes to the infringing conduct of" the

---

[5] Hartmann erroneously labels the paragraph following paragraph 88 as paragraph "62." The numbering scheme remains inconsistent thereafter.

third party. *Id*. at 432 (quotations omitted).  The knowledge required is constructive, such that

persons who "know *or have reason to know* of the direct infringement" may be liable.  *Arista*

*Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (quotation omitted).  Evidence of such

knowledge may be found in "cease-and-desist letters, officer and employee statements,

promotional materials, and industry experience."  *Smith v. BarnesandNoble.com, LLC*, 143 F.

Supp. 3d 115, 124 (S.D.N.Y. 2015) (quotation omitted).

Material contribution, in turn, requires that the defendant "encouraged or assisted others'

infringement, or provided machinery or goods that facilitated infringement."  *Lime Grp.*, 784 F.

Supp. 2d at 432.  To qualify as material contribution, the defendant's support must be "more than

a mere quantitative contribution to the primary infringement . . . [it] must be substantial."  *Arista*

*Records LLC v. Usenet.com, Inc*., 633 F. Supp. 2d 124, 155 (S.D.N.Y. 2009) (quotation omitted).

Additionally, "participation sufficient to establish a claim of contributory infringement may not

consist of merely providing the means to accomplish an infringing activity."  *Livnat v. Lavi*, No.

96 Civ. 4967 (RWS), 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (quotation omitted).

### 2.    Count III: Domestic Contributory Infringement

In alleging contributory infringement based on infringement by domestic actors, Count

III alleges that Amazon's distribution of Hartmann's films on its Prime Video service abetted

infringement by end users of the service who streamed, rented, or purchased the films without

Hartmann's consent.  It alleges that Amazon contributorily infringed on Hartmann's copyrights

by assisting the end-users' direct infringement.  Count III, however, is deficient, because it fails

to adequately allege that Amazon had actual or constructive knowledge that its end users were

infringing Hartmann's copyrights.

To sustain a contributory infringement claim, a plaintiff must allege sufficient facts to support the inference that the defendant "kn[e]w or ha[d] reason to know" of the third party's direct infringement. *Arista Records LLC*, 604 F.3d at 118 ("The knowledge standard is an objective one; contributory infringement liability is imposed on persons who know or have reason to know of the direct infringement." (quotations omitted)).

The SAC, however, does not allege that Amazon knew of the infringement, including by any customary means. It does not allege, for example, that Amazon was ever sent a cease-and-desist letter, asked to take the films down, or was notified that they infringed on Hartmann's copyrights.

Nor does the SAC plausibly assert that Amazon "ha[d] reason to know," *see id.*, of the infringing conduct. It asserts, generally, that Amazon "employs a digital rights management team," "uses a digital rights management software," "had access to license and distribution information contained in metadata accompanying" the films, and had "the benefit of industry experience" such that it "should have known" it was not authorized to distribute the films. SAC ¶¶ 67–69. But the SAC does not plausibly allege that these generic capabilities gave Amazon's constructive knowledge of Hartmann's interest in the four films at issue. It makes only the conclusory allegation that "Amazon had access to license and distribution information contained in metadata . . . and the benefit of industry experience such that Amazon either knew or should have known that neither Amazon, nor its subsidiaries were authorized or licensed to distribute the motion pictures." SAC ¶ 68. It does not allege that, among the ways these tools could have been used, Amazon ever used them in a way that either uncovered or would have tended to undercover the Hartmann's ownership interests in these films. Nor are does the SAC allege that the four films were of particular economic salience to Amazon, that Amazon had been any

reason to suspect a lack of licensure of these films or that the copyrights as to them was being infringed upon, or that Amazon broadly countenanced such infringements.  Rather, beyond its broad claim that Amazon possessed tools that in theory could have been deployed to uncover the fact of the infringement, the SAC is silent.

This spare allegation is insufficient to plead that Amazon "had reason to know" that direct infringement was afoot with respect to these four films specifically.  Count III thus fails to plausibly plead Amazon had actual or constructive knowledge of the infringing nature of the predicate direct infringement.  The Court accordingly grants the motion to dismiss this claim. *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107–09 (2d Cir. 2010) (where plaintiff sent generalized demand letters such that defendant "clearly possessed general knowledge as to counterfeiting on its website," finding that "such generalized knowledge is insufficient"); *id.* at 107 ("[A] service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary."); *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 WL 5199431, at *15–16 (S.D.N.Y. Sept. 30, 2019) (dismissing claim where plaintiff failed to allege that defendants were "ever made aware of any 'specific' allegedly infringing conduct"; plaintiff had alleged that he had provided defendants "with an Infringement Notice" and made "the conclusory assertion that [defendants] [we]re knowingly supplying services" to companies "know[n] to be engaged in infringing activities"); *Dress Barn, Inc. v. Klauber Bros., Inc.*, No. 18 Civ. 8085 (DLC), 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019) ("a threadbare recitation of the legal requirement," that defendants "committed copyright infringement with actual or constructive knowledge of [plaintiff's] rights, and/or in blatant disregard for [plaintiff's] rights," "is inadequate to plausibly

allege . . . infringement" ); *Row, Inc. v. Hotels*, No. 15 Civ. 4419 (JFK), 2018 WL 3756456, at *6 (S.D.N.Y. July 19, 2018) (dismissing copyright claim where plaintiff failed to allege more than a "general knowledge or reason to know that its service is being used to infringe a trademark" (cleaned up)).

### 3.      Count II: Foreign Contributory Infringement

Count II alleges contributory infringement, based on Amazon's alleged enabling of third-party infringers abroad.

Normally, federal copyright laws "do not have extraterritorial application." *Update Art, Inc. v. Modiin Publ'g Ltd*., 843 F.2d 67, 73 (2d Cir. 1988).  However, the Second Circuit has recognized a narrow exception when "an individual commits an act of infringement in the United States that permits further reproduction outside the United States." *Fun-Damental Too, Ltd. v. Gemmy Industries Corp*., No. 96 Civ. 1103 (MBM), 1996 WL 724734, at *4 (S.D.N.Y. Dec. 17, 1996).  In such a case, "a court may assert jurisdiction over those foreign acts and a plaintiff may recover damages for the infringing acts" that took place abroad.  *Id.*

To establish jurisdiction over foreign acts, there must exist a "predicate act" in violation of the Copyright Act that occurred within the United States.  *See id.* at *5 (describing an example predicate act "as when an individual makes unauthorized copies of copyrighted material and then sends them out of the country"); *Update Art*, 843 F.2d at 73; *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976).  "[A] plaintiff must first demonstrate that the domestic predicate act was itself an act of infringement in violation of the copyright law." *Fun-Damental Too*, 1996 WL 724734, at *5.  Conversely, "mere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts."  *Id.*

Here, the SAC alleges that Amazon's reproduction of the films at its data centers in the United States serves as a domestic predicate violation contributing to the foreign infringement because it assisted third-party's infringement abroad. But that claim fails for the same reason as Count III. It does not plausibly allege that Amazon had the requisite mens rea when engaging in the predicate domestic act. As with Count III, Count II fails to assert that Amazon had notice of any kind—from Hartmann or otherwise—that distributing the four films violated Hartmann's copyrights. Nor does it plead any better than does Count III that Amazon "ha[d] reason to know" that infringement was afoot. *See Arista Records LLC*, 604 F.3d at 118. Instead, Count II makes only the conclusory allegation that "[t]he foregoing acts of infringement by Amazon have been willful, intentional, and in disregard and with indifference to the rights of Plaintiff." SAC ¶ 86. Such conclusory statements do not establish the requisite knowledge. *Arista Records LLC*, 604 F.3d at 118. Count II therefore does not allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In any event, Count II does not plead a predicate act of the sort supporting extraterritorial application of Copyright Act. As noted, to plead such a claim, a plaintiff must plead, at the threshold, infringement by the foreign third parties. *Fun-Damental Too*, 1996 WL 724734, at *5. The SAC does not, other than amorphously, speak to this point. It states generically that there was "further infringement by end-users of Prime Video in the Foreign Countries." SAC ¶ 85. This allegation—lacking any reference to any specific act of infringement or any infringer—is too unspecific to sustain Count II's claim that infringement abroad occurred, abetted by infringement at home.

The Court accordingly dismisses Count II as inadequately pled. *See, e.g.*, *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 340 (S.D.N.Y. 2020) (dismissing claim where

plaintiff failed to allege a "link between the foreign publication on the internet and the United States," and therefore "a direct copyright infringement," . . . "given the limitation on the extraterritorial application of United States copyright law"); *Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746 (AKH) (AJP), 2015 WL 5254885, at *13 (S.D.N.Y. Sept. 10, 2015) (dismissing claim for contributory copyright infringement where complaint made only "generalized references to foreign infringement" and plaintiff "presented no evidence of any direct infringement"); *Fun-Damental Too*, 1996 WL 724734, at *6 (dismissing claim where "plaintiff has failed to allege an infringement within the United States that led to extraterritorial infringement, [and] the general rule that extraterritorial infringements are not violations of the Copyright Act applies")

## C.   Vicarious Infringement (Count IV)

Count IV alleges vicarious infringement of copyrights in violation of 17 U.S.C. § 106.  It pleads that Amazon controlled the subsidiary "Amazon Digital" during the subsidiary's alleged infringement of Hartmann's copyrights, and that Amazon therefore is liable for vicariously infringing these copyrights in the United States.  SAC ¶¶ 103–108.  But the SAC's allegations in support of this claim are only conclusory.

A defendant may be vicariously liable for a third party's infringement "if he [1] ha[s] the right and ability to supervise the [third party's] infringing activity and [2] also has a direct financial interest in such activities."  *Gershwin*, 443 F.2d at 1162.  Thus, vicarious liability "does not include an element of knowledge or intent on the part of the vicarious infringer."  *Arista Records LLC*, 633 F. Supp. 2d at 156.  Instead, the plaintiff must have "had the ability to supervise" the infringing activity "and failed to do so."  *Arista Records*, 784 F. Supp. 2d at 435.

And there must have been a "causal relationship" between the infringing activity and a financial benefit reaped by the defendant.  *Id.*

> The SAC, however, does no more than recite these elements in a conclusory manner:

> Amazon is vicariously liable for copyright infringement committed by Amazon Digital as Amazon had the right and the power to control both directly and pursuant to distribution agreements the infringing activities of Amazon Digital, and Amazon controlled, directed, ratified or acquiesced in (and received a direct, financial benefit; financial advantages; and/or other economic consideration from) Amazon Digital's infringing activities.

SAC ¶ 104.  It does not allege how Amazon controlled the subsidiary entity "Amazon Digital" or the means by which Amazon derived profit from it.  It relies solely on the fact of Amazon Digital's subsidiary status.

This "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, is inadequate, as the cases dismissing claims of vicarious infringement make clear.  *See, e.g.*, *New London*, 384 F. Supp. 3d at 410 ("In support of its claims for vicarious infringement, [plaintiff] makes several conclusory allegations regarding [defendants] . . . . [Plaintiff's] allegations in this respect are vague and conclusory and fail to satisfy its Rule 8 pleading burden."); *Ino, Inc. v. Needle & Threads of W. Palm Beach, Inc.*, 19 Civ. 4078 (PKC), 2020 WL 7343037, at *7 (E.D.N.Y. Dec. 14, 2020) ("With respect to the claim for indirect liability, the Complaint offers only vague, conclusory statements . . . these bare recitals of the elements for claims of contributory infringement and vicarious infringement are insufficient."); *see also, e.g.*, *Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1108–09 (S.D.N.Y. 1994) ("[T]he mere potential to influence inherent in the parent-subsidiary relationship is inadequate to ground vicarious liability for infringement . . . there must be indicia beyond the mere legal relationship showing that the parent is actually involved with the decisions, processes, or personnel directly responsible for the infringing activity."); *Broadvision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478 (WHP), 2009 WL

1392059, at *4 (S.D.N.Y. May 5, 2009) ("To state a claim for vicarious liability against a parent for the actions of its subsidiary, a plaintiff must show more than just a legal relationship between the parent and the subsidiary or that the parent benefits from its ownership of the subsidiary," just "a direct financial interest in a subsidiary's infringing activity" is insufficient.); *Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 Civ. 1094 (AKH), 2014 WL 5334698, at *13 (S.D.N.Y. Aug. 19, 2014) ("A parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious liability against a parent for the actions of its subsidiary."); *BroadVision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478 (WHP), 2008 WL 4684114, at *3 (S.D.N.Y. Oct. 15, 2008) (dismissing claim for vicarious liability where "the Complaint does not allege any connection among [defendant] and [subsidiaries'] infringing activities"); *Shady Recs., Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at *26 (S.D.N.Y. Jan. 3, 2005) ("If a parent company with one hundred percent ownership and control must do more than simply own the subsidiary to be vicariously liable.").

### D.    Foreign Infringement (Count V)

Finally, Count V alleges that Amazon's distribution of the films on its Prime Video service in foreign markets constitutes copyright infringement under "foreign copyright laws." SAC ¶¶ "107"[6]–112.  The SAC states:

> Plaintiff's exclusive rights in the Motion Pictures - Commander Hamilton, After the Rain, Austin Powers and Drop Dead Gorgeous - are protectable under Foreign Copyright Laws of countries that are signatories to the Berne Convention. Defendants' actions of distributing copies of [Hartmann]'s copyright protected Motion Pictures . . . to Prime Video subscribers in the Foreign Countries, through the Prime Video service accessible via Amazon.com or Defendants' equivalent websites in the Foreign Countries, or via the Prime Video App, without [Hartmann]'s authorization or consent, constitutes copyright infringement under the Foreign Copyright Laws, entitling RH to money damages under the Foreign

---

[6] Hartmann erroneously labels the paragraph following paragraph 108 as paragraph "107."

Copyright Laws, including, where applicable, statutory damages for each infringing
act.

*Id.* at ¶¶ 112–13.

The SAC's claim to this effect is, however, unspecific.  Beyond reciting a nonexclusive

laundry list of large countries, it does not allege which foreign countries' laws Amazon violated,

*see* SAC ¶ 29 (stating that such countries "includ[ed], but [were] not limited to" the United

Kingdom, Germany, Australia, Japan, and France), let alone any specific foreign law that was

violated, or the factual basis for alleging that such occurred.  As *Kelly* reinforced in the context

of copyright infringement claims, to be viable, a claim must give "the parties notice of the claims

against them," and "fair notice of what the plaintiff's claim is and the grounds on which it rests."

*Kelly*, 145 F.R.D. at 35 (quotation omitted).

Count V is far too vague to meet this standard.  On this ground, it is dismissed.  *See, e.g.*,

*Gench v. HostGator.com LLC*, No. 14 Civ. 3592 (RA) (GWG), 2015 WL 3757120, at *11

(S.D.N.Y. June 17, 2015) (dismissing where the "allegations are too vague, conclusory, and

unintelligible to allow a finding that the elements of a copyright infringement claim have been

met" where plaintiff seems "to assume that because she perceived the defendants to have

improperly hosted the site, the site's copyrighted content must necessarily have been

appropriated"); *Sharp v. Patterson*, No. 03 Civ. 8772 (GEL), 2004 WL 2480426, at *14–15

(S.D.N.Y. Nov. 3, 2004) (copyright claims were "too vague to survive a motion to dismiss");

*Reid v. Am. Soc'y of Composers, Authors & Publishers*, 01 No. 92 Civ. 270 (SWK), 994 WL

3409, at *1 (S.D.N.Y. Jan. 5, 1994) (holding the allegations of copyright infringement of that

plaintiff "cop[ied], publish[ed], distribut[ed], s[old] and transferr[ed defendant's]

[p]hotographs . . .  failed to enumerate particular instances of impermissible use and, therefore,

does not satisfy the requisite pleading elements for a copyright infringement claim"); *Franklin*

*Elec. Publishers, Inc. v. Unisonic Prods. Corp.*, 763 F. Supp. 1, 4 (S.D.N.Y. 1991) ("In applying Rule 8 to copyright infringement actions, courts have required that particular infringing acts be alleged with some specificity.").

## CONCLUSION

For the foregoing reasons, the Court denies Amazon's motion to dismiss Count I, but dismisses Hartmann's other claims.  The Clerk of Court is respectfully directed to terminate the motions pending at dockets 31 and 38.

The Court schedules an initial pretrial conference on August 30, 2021 at 9:00 am.  This conference will be held telephonically.  Counsel are directed to review the Court's Emergency Individual Rules and Practices in Light of COVID-19, found at https://nysd.uscourts.gov/hon-paul-engelmayer, governing the procedures for telephonic conferences.  Counsel are further directed to prepare a Civil Case Management Plan and joint letter in accordance with the Court's Individual Rules, to be submitted to the Court no later than August 27, 2021 at 2:00 pm, and to notify chambers by that date as to the identity of counsel who will be appearing at the conference.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: August 19, 2021
       New York, New York